**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| HERMAN GRAVES, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 1:08-1140 (CKK) |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAN BROKERS CONDUIT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT INDYMAC'S MOTION TO DISMISS THE COMPLAINT**

Defendant Indymac Bank, F.S.B. ("Indymac"), pursuant to Fed. R. Civ. P. 12(b)(6), hereby moves to dismiss the portions of the Complaint which purport to state claims against Indymac. In support of this Motion, Indymac states the following:

(1) The claims against Indymac should be dismissed for failure to state a claim because the Complaint's allegations fail to allege that Indymac engaged in any of the conduct related to the negotiation of the Plaintiffs' loan terms, and therefore similarly fails to allege that Indymac engaged in any improper behavior; and

(2) The claims against Indymac further should be dismissed because federal law preempts attempts to invoke state law to regulate the lending activities of federal savings banks and associations such as Indymac, *see* 12 U.S.C. § 1464(a); 12 C.F.R. 560.2.

In further support of this Motion, Indymac respectfully refers the Court to its accompanying Memorandum in Support of the Motion to Dismiss the Complaint, incorporated herein by reference.

WHEREFORE, Indymac respectfully requests that the Court grant its Motion to Dismiss the Complaint, and that the Court dismiss all claims of the Complaint against Indymac with prejudice.

Respectfully submitted,

*/s/ Andrew C. Bernasconi*
Andrew C. Bernasconi
D.C. Bar No. 484614
REED SMITH LLP
1301 K Street, N.W.
Suite 1100, East Tower
Washington, D.C. 20005
Telephone:  (202) 414-9200
Facsimile:  (202) 414-9299
abernasconi@reedsmith.com

*Counsel for Defendant Indymac Bank,
F.S.B.*

Dated:  July 8, 2008

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Defendant Indymac's Motion to Dismiss the Complaint, Memorandum In Support of Motion to Dismiss, and Proposed Order were served on this 8th day of July, 2008, via first class mail, postage prepaid, upon the following:

Rawle Andrews, Jr., Esq.
AARP Legal Counsel for the Elderly
601 E Street NW, Suite A4-400
Washington, DC  20049
*Attorney for Plaintiffs*
*(also served electronically via* CM/ECF)

John McCauley, Esq.
Venable LLP
750 E. Pratt Street
Suite 900
Baltimore, MD 21202
*Attorney for Defendant Savings First Mortgage LLC*
*(also served electronically via* CM/ECF)

Catherine A. Bledsoe, Esq.
Gordon, Feinblatt, Rothman, Hoffberger & Hollander LLC
233 East Redwood Street
Baltimore, MD 21202
*Attorney for Defendant Premier Financial Co.*
*(also served electronically via* CM/ECF)

American Brokers Conduit
538 Broadhollow Road
Mellville, NY 11747

American Home Mortgage Corp.
538 Broadhollow Road
Mellville, NY 11747


/s/  *Andrew C. Bernasconi*
Andrew C. Bernasconi

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| HERMAN GRAVES, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 1:08-1140 (CKK) |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAN BROKERS CONDUIT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## INDYMAC'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

Defendant Indymac Bank, F.S.B. ("Indymac"), pursuant to Fed. R. Civ. P. 12(b)(6), hereby moves to dismiss the portions of Counts I and VI of the Complaint which purport to state claims against Indymac. These claims should be dismissed because they fail to allege that Indymac engaged in any of the conduct alleged, and further because federal law preempts attempts to invoke state law to regulate the lending activities of federal savings banks and associations such as Indymac. For the reasons set forth more fully below, the Complaint's claims against Indymac should be dismissed with prejudice.

## BACKGROUND

Plaintiffs Herman and Gracie Graves (collectively, "Plaintiffs") filed the Complaint in the Superior Court of the District of Columbia on May 23, 2008, naming as defendants the following entities: American Brokers Conduit, American Home Mortgage Corp., Premier Financial Co., Indymac, and First Mortgage LLC[1] (collectively, "Defendants").

---

[1]     The Complaint references "Defendant Savings First Mortgage LLC," but the caption of the Complaint names simply "First Mortgage LLC." For consistency and ease of reference, this Motion will refer to "Savings First Mortgage LLC" or "Savings First."

The Complaint generally alleges that the Plaintiffs[2] re-financed their home mortgage loan in November, 2006, following a telephone solicitation and a follow-up meeting with a mortgage broker; the mortgage lender named on the new mortgage loan was Savings First Mortgage, LLC. *See* Compl. ¶¶ 18-22. At some point following the closing on the mortgage loan with Savings First LLC, the loan was subsequently sold to Indymac. *Id*. ¶ 23.

Two months later, the Plaintiffs elected to re-finance the mortgage that they signed with Savings First LLC (and which was eventually sold to Indymac). The Plaintiffs affirmatively contacted Premier Financial Company, and then met and negotiated with a broker from Premier. *See* Compl. ¶¶ 30-31. Following negotiation with the broker from Premier Financial Company, the Plaintiffs closed on this re-finance loan. *Id.* ¶¶ 35-37. The lender on that loan was American Brokers Conduit. *Id.* ¶ 38.

The Plaintiffs filed the Complaint in the District of Columbia Superior Court on May 23, 2008. Indymac, as joined by Defendants Savings First LLC and Premier Financial Company, timely removed the Complaint to this Court on June 30, 2008, following their respective receipt of the Complaint.

The Complaint includes five[3] causes of action against the Defendants, alleging violations of the federal Truth in Lending Act (15 U.S.C. § 1601 *et seq.*) ("TILA"), the District of Columbia corollary to the federal TILA (D.C. Code § 28-3301 *et seq.*), and the District of

---

2    The Complaint actually alleges that the mortgage note was made out only in the name of Plaintiff Gracie Graves. *See* Compl. ¶¶ 42-43. For ease of reference, this Motion will refer collectively to "Plaintiffs," due to the manner in which the allegations are styled. However, in using this phraseology, Indymac does not waive any arguments that it may assert against either of the Plaintiffs individually.

3    The Complaint includes causes of action numbered as Count I and Counts III through VI, omitting any cause of action designated as Count II.

Columbia Consumer Protection Procedures Act (D.C. Code § 28-3901 *et seq*.). The Complaint only alleges causes of action against Indymac in Counts I and VI, both of which solely address the Consumer Protection Procedures Act ("CPPA"). Notably, the Complaint does not allege that Indymac violated either the TILA or the D.C. corollary.

## STANDARD OF REVIEW

Plaintiffs' allegations against Indymac may be dismissed if they fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) challenge, a complaint's allegations generally must set forth a statement explaining that the pleader is entitled to relief and providing the defendant with "fair notice of the claims against him." *Aktieselskabet AF 21 v. Fame Jeans, Inc.*, 525 F.3d 8, 15 (D.C. Cir. 2008). While this standard does not necessarily require detailed factual allegations, "a plaintiff must furnish 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Chandler v. W.E. Welch & Assocs., Inc.*, 535 F. Supp. 94, 102 (D.D.C. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S.Ct. 1955, 1964-65 (2007)). In so doing, the complaint's factual allegations "'must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Kevin S. Bennett Trust v. Bennett*, ---F. Supp. 2d ---, No. 07-1519 (CKK), 2008 WL 2445489 at *3 (D.D.C. June 19, 2008) (quoting *Twombly*, 127 S.Ct. at 1965).

## ARGUMENT

## I.    THE COMPLAINT FAILS TO ALLEGE NECESSARY ELEMENTS TO STATE A CLAIM AGAINST INDYMAC

The allegations against Indymac should be dismissed pursuant to Rule 12(b)(6) because the Complaint fails to set forth the necessary elements and circumstances to state a valid claim against Indymac. Specifically, the Complaint fails to allege that Indymac participated in any of

the conduct for which the Complaint attempts to assign liability, and therefore fails to state a

claim for which relief can be granted, as set forth more fully below.

A.    **Count I Fails To Allege Material Misrepresentation or Omission by Indymac**

The allegations against Indymac in Count I should be dismissed because Indymac did not

make any material misrepresentations or omissions to the Plaintiffs and the Complaint fails to

allege any actionable conduct by Indymac.  Specifically, Count I of the Complaint claims that

various Defendants violated sections 28-3904(e) and (f) of the CPPA, which prohibit material

misrepresentations or omissions.  *See* Compl. ¶¶ 55, 57.[4]  "[T]o state a claim based upon an

unfair trade practice [in violation of D.C. Code §§ 28-3904(e) and (f)], the plaintiff must allege

that the defendant made a material misrepresentation or omission that has a tendency to

mislead."  *Alicke v. MCI Comms. Corp.*, 111 F.3d 909, 912 (D.C. Cir. 1997) (citing D.C. Code

§§ 28-3904(e) and (f)).

The allegations of Count I should be dismissed as to Indymac, because the claims are

directed at conduct and representations by entities other than Indymac.  Specifically, Count I of

the Complaint alleges violations of the CPPA which prohibit: the misrepresentation or omission

of material facts with a tendency to mislead a consumer, D.C. Code §§ 28-3904(e) & (f); and

making sales or lease agreements with unconscionable terms, D.C. Code § 28-3904(r).  *See*

Compl. ¶ 55-57.  The factual predicate for the misrepresentation/omission allegations involve

statements that various Defendants allegedly made or omitted in inducing the Plaintiffs to make

---

[4]    Count I of the Complaint inadvertently contains two separate paragraphs which are both
numbered as Paragraph 57.  For ease of reference, citations to "¶ 57(First)" and "¶
57(Second)" are intended to reference the first and second iterations respectively of
Paragraph 57 as they appear in Count I.  References to "¶ 57" without any further
specification are intended to reference both the first and second iterations of Paragraph
57.

or re-finance their mortgage loans.  *See* Compl. ¶ 57(First) (a) through (f).[5]  Indeed, the

allegations in ¶ 57(First) state the name of the entities that allegedly made the misrepresentations

or omission – and notably, Indymac is not named or referenced in these allegations.

The Complaint does not allege any material misrepresentation or omission by Indymac

because Indymac did not engage in any communications with the Plaintiffs.  *Id.*  Because

Indymac purchased the mortgage loan from another lender on the secondary mortgage market,

rather than by negotiating with the borrowers, Indymac did not have any contact with the

Plaintiffs during the loan origination process.  *See* Compl. ¶ 23.  Thus, since Indymac purchased

a contract/loan containing terms negotiated by Plaintiffs with a separate lender, Indymac did not

make – and could not have made – any material misrepresentations or omissions to the Plaintiffs.

Since the Plaintiffs failed to allege Indymac "made a material misrepresentation or omission that

has a tendency to mislead," Count I fails to state a claim for relief against Indymac and should be

dismissed.  *See Alicke*, 111 F.3d at 912 (dismissing CPPA allegations because complaint failed

to allege representation or omission that would mislead a reasonable consumer); *see also Family

Fed. Sav. & Loan v. Davis (In re Davis)*, 172 B.R. 437, 466 (Bankr. D.C. 1994) (dismissing

allegations of CPPA violations as lacking merit because "there was no evidence of any

representations made by Family Federal to Frankie Davis").

_____

5    Specifically, the Complaint makes the following allegations: (a) "They misrepresented
     the benefits of the loans . . . ."; (b) "Savings First and Premier led the Graves [*sic*] failed
     to tell the Graves" about a prepayment penalty; (c) "Savings First and Premier failed to
     inform the Graves" about prepayment penalties; (d) "Savings First misrepresented" the
     suitability of the loan; (e) "Premier misrepresented" the impact of the loan on the current
     mortgage; (f) "They misrepresented the high costs of obtaining the mortgages"; (g)
     American Brokers Conduit made the mortgage without providing sufficient Notice of
     Right to Cancel; (h) "They failed to explain the complexities" of the mortgage; (*i*) "Made
     representations . . . to make them believe that the payments on the new mortgages would
     be affordable to them."

Furthermore, any allegations in Count I regarding material misrepresentations and omissions by Indymac further should be dismissed for failure to plead fraud with the particularity required by Fed. R. Civ. P. 9(b). Specifically, the allegations sound in fraud to the extent they claim reasonable reliance upon a knowing misrepresentation or omission of a material fact with an intent to deceive. *See Caulfield v. Stark*, 893 A.2d 970, 974 (D.C. 2006) (elements of fraud). To sustain allegations sounding in fraud, the plaintiff must plead the time, place, and content of the false representations, the fact(s) misrepresented, what was retained or given up as a consequence of the fraud, and the individual who made the alleged misrepresentation. *See Kowal v. MCI Comms. Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994); *United States v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981). The Complaint does not identify any assertions, omissions, or misrepresentations by Indymac, and likewise fails to satisfy the remaining requirements of Rule 9(b). Thus, any claims of misrepresentation by Indymac should be dismissed for failing to satisfy the requisite pleading standards. *See Kowal*, 16 F.3d at 1279.

Furthermore, the allegations in Count I concerning the "ma[king] of unconscionable loans" similarly must be dismissed, because Indymac did not negotiate with or make any loans to the Plaintiffs. Count I claims that various Defendants took advantage of the Plaintiffs in negotiating the terms of the mortgage note, extending credit to the Plaintiffs in light of their financial circumstances, and charging excessive and unfair fees relating to the mortgage note. *See* Compl. ¶ 57(Second) (a) through (d). Yet, according to the Complaint's allegations, Indymac did not negotiate the terms of any loan at issue, did not offer or extend the mortgages that Plaintiffs executed, and did not originate any of Plaintiffs' loans. For example, the Complaint does not allege that Indymac negotiated with Plaintiffs to re-finance an earlier mortgage; rather, the allegations claim that Indymac simply purchased a mortgage from another

lender on the secondary market. *See* Compl. ¶¶ 18-22 (alleging Plaintiffs negotiated with broker

and executed loan with Savings First LLC); *id*. ¶ 23 (Indymac purchased mortgage extended by

Savings First). Because Indymac did not make and extend any of the mortgages at issue to the

Plaintiffs, and did not negotiate the terms of those mortgage notes with the Plaintiffs, Indymac

could not have engaged in any of the "unconscionable" conduct that the Plaintiffs allege. Thus,

since the Complaint fails to allege that Indymac engaged in any allegedly "unconscionable"

conduct, the allegations of Count I do not state a cognizable claim against Indymac and should

be dismissed.

> **B.      Count VI Fails to Allege That Indymac Engaged in Proscribed Conduct**

Count VI of the Complaint similarly should be dismissed because it fails to allege that

Indymac engaged in any illegal or proscribed conduct. The allegations of Count VI again claim

violations of the "unconscionability" provisions of the CPPA, in relation to the alleged payment

of financial incentives (*e.g.*, yield spread premiums) to mortgage brokers in the "origination" of

mortgage loans. *See* Compl. ¶ 74 (citing D.C. Code § 28-3904(r)). As an initial matter, Indymac

did not originate any of the loans to the Plaintiffs, but instead purchased the loan note on the

secondary mortgage market. Thus, since Indymac did not participate in the loan origination

process, according to the express allegations of the Complaint, Count VI fails to allege that

Indymac engaged in any of the conduct alleged and should be dismissed as to Indymac.

Furthermore, the allegations of Count VI should be dismissed as to Indymac because the

Complaint does not allege that Indymac engaged the services of any mortgage broker in

connection with the origination of Plaintiffs' mortgages, much less that Indymac paid any fees or

incentives to a broker in connection with the Plaintiffs' loans. Rather, the Complaint alleges that

the Plaintiffs negotiated with a broker in connection with the Savings First mortgage note

(Compl. ¶¶ 18-22), and then again with another broker in connection with the American Brokers

Conduit mortgage (Compl. ¶¶ 31-38). Furthermore, the Complaint alleges the payment of

financial incentives by a lender to a broker only in connection with the American Brokers

Conduit note. *See* Compl. ¶ 41. The Complaint is simply devoid of any allegations concerning

payment of incentives to a mortgage broker by Indymac in connection with the Plaintiffs' loans.[6]

Because the Complaint does not contain any allegations or factual assertions implicating

Indymac in the payment of financial incentives to mortgage brokers, Count VI should be

dismissed against Indymac.

Furthermore, Count VI should be dismissed against Indymac because the Plaintiffs fail to

allege any damages resulting from actions by Indymac. Count VI fails to satisfy the pleadings

standards to state a claim for relief under D.C. Code § 28-3904(r) because the Complaint fails to

allege that the Plaintiffs lacked a meaningful choice of alternatives. *See Ford v. Chartone, Inc.*,

908 A.2d 72, 90 (D.C. 2006) (citations omitted). To the contrary, the Complaint specifically

alleges that Plaintiffs had a wide a wide and meaningful choice of alternative lenders and terms.

*See* Compl. ¶ 16. In light of the Plaintiffs' alleged choice of lenders, combined with the absence

of any allegations of wrongdoing against Indymac, the Complaint fails to allege any damages

based on conduct by Indymac.[7] Accordingly, Count VI should be dismissed because the

---

[6]    Moreover, to the extent that the Complaint attempts to assign liability to Indymac by
alleging that Indymac "act[ed] in concert with Premier and Savings First," the
Complaint's conclusory allegations are insufficient to state a claim under the CPPA or
any other law, and similarly should be dismissed. *See Twombly*, 127 S.Ct. at 1966-67
(complaint must set forth factual allegations to support conclusory allegations).

[7]    Moreover, to the extent that the Complaint seeks recission of the mortgages, the remedy
is unavailable where the loan has already been paid off through a re-financing. *See King
v. State of Cal.*, 784 F.2d 910, 913 (9th Cir. 1986), *cert. denied*, 484 U.S. 802 (1987)
(dismissing attempt to rescind mortgage loan under TILA, because after re-financing with
another lender, "there is nothing left to rescind"). Likewise, in the instant case, the
Continued on following page

Complaint fails to allege that Indymac engaged in any proscribed activity; fails to allege or claim any damages resulting from the alleged payment of yield spread premiums; and fails to satisfy the elements to state a claim of "unconscionable" actions under the CPPA.

## II.    THE COMPLAINT'S STATE LAW CLAIMS AGAINST INDYMAC MUST BE DISMISSED BECAUSE THEY ARE PREEMPTED BY FEDERAL LAW

As set forth above, the Complaint does not allege any improper conduct by Indymac relating to the negotiation of mortgage loan terms with the Plaintiffs.  However, even assuming the Plaintiffs had included such allegations in the Complaint, any such allegations would have to be dismissed against Indymac because they would be preempted by federal law.  The Complaint fails to state a claim against Indymac because allegations concerning the lending practices of federal savings banks, like Indymac, are expressly preempted by federal statutes and regulations. The United States Supreme Court's authority on this subject matter is directly applicable and dictates that state law claims challenging the lending practices of federally-charted institutions are preempted under federal law and thus should be dismissed.  *See Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141 (1982).

### A.    The Preemption Doctrine

The pre-emption doctrine is a natural extrapolation of the Supremacy Clause of the United States Constitution, U.S. Const., art. VI, cl. 2, and works to supersede the invocation of state laws that attempt to regulate an area that the Congress has carved out for federal regulation. *See Fidelity*, 458 U.S. at 153.  Congressional intent to supersede the application of state law may

---

Continued from previous page

Complaint alleges that Plaintiffs re-financed their loan shortly after Indymac purchased the loan.  *See* Compl. ¶¶ 31-38.  Thus, recission is not a remedy available to Plaintiffs, and they have not otherwise alleged any damage resulting from Indymac's conduct.

be (1) express, (2) inferred, as where "[t]he scheme of federal regulation [is] so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or (3) implied, as where state law is rendered invalid to the extent it actually conflicts with federal law. *See id.* (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). The Plaintiffs' attempts to regulate a federal savings bank through invocation of the CPPA are thus subject to preemption under all of the three analyses set forth by the Supreme Court.

### B.    Federal Regulation of Federal Savings Banks

The Home Owners Loan Act (HOLA), 12 U.S.C. § 1461 *et seq*., is the statutory basis for federal regulation of federally-chartered lending institutions, including federal savings banks. *See* 12 U.S.C. § 1464(a) (granting the Director of the Office of Thrift Supervision, formerly known as the Federal Home Loan Bank Board, broad authority to regulate Federal savings associations, "including Federal savings banks"). The Supreme Court expressly acknowledged that "'[i]t would have been difficult for Congress to give the Bank Board [now known as the Office of Thrift Supervision] a broader mandate.'" *De la Cuesta*, 458 U.S. at 161 (quoting *Glendale Fed. Sav. & Loan Ass'n v. Fox*, 459 F. Supp. 903, 910 (C.D. Cal. 1978)). Thus, to promote the goal of uniform regulation and best practices through federal regulation of all Federal savings associations, "the statutory language suggests that Congress expressly contemplated, and approved, the Board's promulgation of regulations superseding state law." *De la Cuesta*, 458 U.S. at 162.

In accepting the plenary authority granted by Congress, the Office of Thrift Supervision ("OTS") has promulgated regulations designed to expressly pre-empt state law regulation of federal savings banks. Specifically, the agency has declared:

> OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum

- 10 -

flexibility to exercise their lending powers in accordance with a uniform scheme of federal regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, ***without regard to state laws purporting to regulate or otherwise affect their credit activities***, except to the extent provided in paragraph (c) . . . .

12 C.F.R. § 560.2(a) (emphasis added). OTS provided a non-exhaustive exemplar list of the categories of laws and regulations subject to pre-emption. *See* 12 C.F.R. §§ 560.2(b)(1) through (13). OTS regulatory preemption is not limited to state banking statutes and regulations, but rather includes "*any* state statute, regulation, ruling, order or judicial decision." 12 C.F.R. § 560.2(a) (emphasis added).

Likewise, the OTS regulation exempted certain traditional state law concerns from pre-emption, including contract and commercial law, real property law, tort law, and criminal law. *See* 12 C.F.R. § 560.2(c). Notably, however, OTS has instructed that "§ 560.2 is based on the premise that any state law that affects lending is preempted unless it clearly falls within the parameters of paragraph (c)." 61 Fed. Reg. 50,951, 50,966 (Sept. 30, 1996). In short, federal statutes and regulations expressly pre-empt the use of any state law to affect the lending practices of a federal savings bank.

### C. Preemption Analysis

The Complaint's state-law allegations are expressly pre-empted by federal law and regulations governing federal savings banks, to the extent they are directed at Indymac. The OTS regulation describing the broad preemptive force of federal law over state laws that affect federal lending practices is directly applicable to the instant analysis, because "[f]ederal regulations have no less preemptive effect than federal statutes." *See de la Cuesta*, 458 U.S. at 153. Thus, the Supreme Court's analysis requires the preemption of claims described in 12

C.F.R. §§ 560.2(b), as well as any additional claims that are not plainly within the parameters of 12 C.F.R. §§ 560.2(c).

The allegations that serve as the basis for the Complaint's allegations against Indymac are expressly subsumed within the categories of actions subject to preemption by HOLA. First, Count I alleges that certain Defendants violated the CPPA by making (or failing to disclose) material statements and representations relating to the costs and terms of credit associated with the Plaintiffs' mortgages.8 *See* Compl. ¶ 57(First) (a) through (f). Yet OTS has explicitly pre-empted the field governing the types of permissible and required representations and statements by federal savings banks to lenders in connection with credit transactions. *See* 12 C.F.R. § 560.2(b)(9) (preempting state laws purporting to impose requirements regarding "[d]islcosure and advertising," including but not limited to credit solicitations, applications, and contracts and other content to be provided to borrowers); *see also Silvas v. E*Trade Mort. Corp.*, 514 F.3d 1001, 1004, 1006 (9th Cir. 2008) (finding that California's Unfair Competition Law was preempted because "the [OTS] regulation is clear – the field of lending regulation of federal savings associations is preempted."); *(Greenwald v. First Federal Sav. & Loan Ass'n*, 446 F. Supp. 620, 624 (D. Mass. 1978) (preempting state law requiring interest payment on certain real estate tax deposits because regulations promulgated pursuant to the HOLA, 12 U.S.C. § 1464(a), preempt the entire field of interest payments by federally-chartered institutions subject to HOLA).

---

8       As set forth above, these allegations do not involve Indymac because the Complaint does not allege any communications between the Plaintiffs and Indymac, much less any communications that Indymac made or failed to disclose material facts.

The remaining allegations in Count I, concerning "unconscionable" loan terms, fees, and loan origination guidelines, Compl. ¶ 57(Second) (a) through (d), are likewise expressly preempted.  The OTS regulation unambiguously preempts any state law attempts to regulate federal savings banks' terms of credit, fees (including prepayment penalties), and loan origination guidelines.  *See* 12 C.F.R. §§ 560.2(b)(4) (terms of credit), 560.2(b)(5) (all loan-related fees), and 560.2(b)(10) (loan origination guidelines); *see also National Home Mortgage Ass'n v. Face*, 239 F.3d 633, 639 (4th Cir. 2001) (noting "[i]t is undisputed" that OTS regulations explicitly authorize collection of prepayment penalties by federal savings banks in accordance with the terms set forth in the loan) (citing 12 C.F.R. §§ 560.34, 560.220); *Meyers v. Beverly Hills Fed. Sav. & Loan Ass'n*, 499 F.2d 1145, 1147 (9th Cir. 1974) (affirming dismissal of complaint challenging prepayment penalties in real estate loan agreements, holding that "federal law preempts the field of prepayments of real estate loans to federally chartered savings and loan associations; so that any California law in the area is inapplicable to federal savings and loan associations operating within California").

Finally, the allegations of Count VI are likewise preempted by the OTS regulation and should be dismissed.  Count VI claims that Defendants violated the CPPA by "promoting, underwriting and ultimately funding the plaintiffs' payment option ARM loans" by paying loan origination incentives and offering terms of credit that result in negative amortization of the Plaintiffs' home equity.  *See* Compl. ¶¶ 74(a) through (d).  The allegations set forth in Count VI are preempted by the OTS regulation's occupation of the field governing the terms of credit (including amortization of loans), advertising of loans, and the "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages."  12 C.F.R. §§ 560.2(b)(10) (processing, origination, and purchase of mortgages); 560.2(b)(4) (terms of credit,

including amortization of loans); 560.2(b)(5) (advertising of credit and loans).  *See OTS Ltr. Rul.*
*P-2003-2* (Jan. 30, 2003), *available at* 2003 OTS LEXIS 3 (providing agency determination that
state "Predatory Lending" law was preempted, where statute imposed requirements on federal
savings association regarding mortgage origination and refinancing, and prohibited lending
without regard to repayment ability and the payment of incentive/referral fees to mortgage
brokers) (attached hereto as **Exhibit A**); *National City Bank of Indiana v. Turnbaugh*, 367 F.
Supp. 2d 805, 818 (D. Md. 2005) (holding that regulations promulgated under National Bank Act
which permit national banks to "make, sell, purchase, participate in, or otherwise deal in ARM
loans," and to impose fees for prepayment of loans, preempt any state law limitation on those
activities).

     The Complaint's state law allegations therefore must be dismissed for failure to state a
claim against Indymac because Congress (and the OTS, through authority delegated by
Congress) maintains exclusive regulatory jurisdiction over the lending activities of federal
savings banks, subject to exceptions not applicable here.  The regulation of federal savings banks
has been preempted expressly by OTS, by inference (as the Supreme Court acknowledged in
recognizing the extraordinarily broad authority to regulate delegated by Congress),[9] and because
application of the CPPA against Indymac would directly conflict with federal law.[10]  Since the

---

[9]     *See Silva*, 514 F.3d at 1004; *Goudreau v. Standard Fed. Sav. & Long Ass'n*, 511 A.2d
        386, 392 n.8 (D.C. 1986) (acknowledging courts have found that the OTS regulations
        promulgated pursuant to the HOLA occupy the entire field of lending by federal savings
        associations).

[10]    For example, the Complaint suggests that the alleged loan prepayment fee charged to the
        Plaintiffs was improper.  *See* Compl. ¶¶ 38, 57(Second)(a).  However, any attempt to
        hold Indymac liable for charging a loan prepayment fee (or for the timing or amount of
        the fee) would run directly contrary to federal regulations permitting federal savings
        banks to impose prepayment fees at their discretion as to time and amount.  *See, e.g.*, 12
        C.F.R. § 560.34.

state law allegations against Indymac are preempted (under any preemption standard), and

Plaintiffs have not alleged any federal cause of action against Indymac, the Complaint against

Indymac should be dismissed with prejudice.

## CONCLUSION

Based on the foregoing, Indymac respectfully requests that all allegations of the

Complaint against Indymac be dismissed with prejudice as to Indymac because the Complaint

fails to allege any actionable conduct by Indymac, and further because any claims of improper

lending terms against Indymac are preempted by federal statute and regulations.

Respectfully submitted,

*/s/ Andrew C. Bernasconi*
Andrew C. Bernasconi
D.C. Bar No. 484614
REED SMITH LLP
1301 K Street, N.W.
Suite 1100, East Tower
Washington, D.C. 20005
Telephone:  (202) 414-9200
Facsimile:  (202) 414-9299
abernasconi@reedsmith.com

*Counsel for Defendant Indymac Bank, F.S.B.*

Dated:  July 8, 2008

# EXHIBIT A

LEXSEE 2003 OTS LEXIS 3

Office of Thrift Supervision

P-2003-2

*2003 OTS LEXIS 3*

January 30, 2003

**FROM:**  **[*1]**  Chief Counsel

**SUBJECT:** Preemption of New York Predatory Lending Law


 **Preemption of New York Predatory Lending Law**

**Summary Conclusion:** Federal law preempts application of various provisions of the New York Predatory Lending Law to federal savings associations and their operating subsidiaries.

**Date:** January 30, 2003

**Subjects:** Home Owners' Loan Act/Savings Association Powers

P-2003-2

 Dear Text Omitted:

    This responds to your recent letter on behalf of Text Omitted ("Association"), a federal savings association. In your letter, you ask the Office of Thrift Supervision ("OTS") to confirm that federal law preempts the application to the Association of the recently enacted New York Predatory Lending Law ("NY law"). n1 We conclude that NY law provisions purporting to regulate the terms of credit, loan-related fees, disclosure and advertising, and mortgage origination, refinancing, and servicing are preempted by federal law from applying to federal savings associations. n2

        n1 The NY law is codified as N.Y. Banking Law § 6-1, N.Y. Gen. Bus. Law § 771-a, and N.Y. Real Prop. Acts. Law § 1302. The NY law takes effect April 2003.

        n2 The same conclusion would apply to preemption for federal savings association operating subsidiaries. OTS has consistently indicated that state laws purporting to regulate the activities of a federal savings association's operating subsidiary are preempted by federal law to the same extent such laws are preempted for the federal savings association itself. *See* 12 C.F.R. § 559.3(n)(1) (2002); OTS Op. Chief Counsel (January 21, 2003); OTS Op. Chief Counsel (July 26, 1999) (and authorities cited therein).

 **[*2]**
**Background**

    The NY law imposes requirements on "high-cost home loans," including such loans made by federal savings associations. n3 High-cost home loans are subject to certain requirements on the terms of credit, loan-related fees, disclosure and advertising, and  mortgage origination, refinancing, and servicing. Requirements concerning the terms of credit and loan-related fees include prohibiting call provisions, balloon payments, negative amortization, default interest rates, modification or deferral fees, and single premium insurance financing, as well as limiting advance payments and the financing of points and fees. n4 Requirements concerning disclosure and advertising include mandating a disclosure at application concerning financial counseling, a pre-closing disclosure which, among other things, warns about possible foreclosure and home loss in the event of default and encourages shopping and credit counseling, and a legend on the

mortgage instrument identifying the loan as high-cost, as well as prohibiting the encouragement of default. n5 Requirements concerning mortgage origination, refinancing, and servicing include limiting the circumstances in which a refinancing **[*3]** may occur, prohibiting lending without regard to repayment ability, prohibiting the payment of referral fees to mortgage brokers, restricting payments to home improvement contractors from loan proceeds, and mandating reporting of payment history to a consumer credit bureau. n 6

n3 A "high-cost home loan" is a mortgage loan (including a home equity loan, but excluding a reverse mortgage) to a natural person secured by a one- to four-family owner-occupied principal dwelling located in New York, where the principal amount does not exceed the lesser of $ 300,000 (or the Fannie Mae conforming loan limit which is $ 322,700 for 2003 for a single-family dwelling), and which exceeds specified annual percentage rate or point/fee thresholds. N.Y. Banking Law § 6-1(1)(d)-(h). The NY law purports to apply to federal savings associations. N.Y. Banking Law §§ 6-1(1)(i) and 590(1)(e).

n4 N.Y. Banking Law § 6-1(2)(a)-(f), (h), (m), and (q).

n5 N.Y. Banking Law §§ 6-1(2)(1)(i)-(ii) and (o) and 6-1(2-a)(a).

n6 N.Y. Banking Law §§ 6-1(2)(i)-(k), (n), and (p) and 6-1(2-a)(b).

The NY law also contains a multifaceted compliance scheme. The NY law grants authorization to the NY Attorney General,  **[*4]** the NY Superintendent of Banks, or any party to a high-cost home loan to enforce the law through litigation. n7 Remedies available include actual and statutory damages, attorneys' fees, injunctive and declaratory relief, for intentional violations voiding of loan agreements and borrower recoupment of payments made, and rescission of the loan transaction without time limitation. n8 Further, the NY law uses state foreclosure law as an additional tool to compel compliance with the predatory lending law. The NY law makes a violation of the predatory lending law a foreclosure defense and requires a lender to affirmatively prove compliance with the NY law as a prerequisite to obtain the entry of judgment in a foreclosure action. n9

n7 N.Y. Banking Law § 6-1(5)-(6).

n8 N.Y. Banking Law § 6-1(7)-(12).

n9 N.Y. Real Prop. Acts. Law § 1302.

## Discussion

The NY law provisions discussed above, which purport to regulate the terms of credit, loan-related fees, disclosure and advertising, and mortgage origination, refinancing, and servicing are preempted by federal law from applying to federal savings  associations. n10 In enacting the Home Owners' Loan Act ("HOLA"), n11  **[*5]**  Congress required the Federal Home Loan Bank Board ("FHLBB"), and now the OTS, to provide for the organization, incorporation, examination, operation, and regulation of federal savings associations "giving primary consideration of the best practices of thrift institutions in the United States." n12 Consistent with this language, OTS has made clear in its lending regulations its intent to carry out this congressional objective by giving federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. n13 That uniform federal scheme occupies the field of regulation for lending activities. The comprehensiveness of the HOLA language demonstrates that Congress intended the federal scheme to be exclusive, leaving no room for state regulation, conflicting or complementary. n14

n10 As per a January 16, 2003 telephone discussion between you and OTS staff, however, this opinion does not address the restriction on mandatory arbitration clauses in N.Y. Banking Law § 6-1(2)(g). Nor does it address the responsibilities of home improvement contractors under N.Y. Gen. Bus. Law § 771-a, since the Association is not a home improvement contractor.

**[*6]**

n11 *12 U.S.C.A. § 1461 et seq.* (West 2001).

n12 HOLA § 5(a); *12 U.S.C.A. § 1464*(a) (West 2001).

n13 12 C.F.R. § 560.2(a) (2002).

n14 *See Fidelity Federal Savings and Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153 (1982); Barnett Bank of Marion County, N.A. v. Nelson, 517 U.S. 25, 31 (1996)*. OTS regulations preempt the field of lending regulation for federal savings associations whether or not OTS adopts a regulation governing the precise subject of the state law. *Lopez v. World Savings and Loan Ass'n, No. A095666, 2003 WL 152956* (Cal. App. 1 Dist. Jan. 23, 2003).

OTS occupies the field to enhance safety and soundness and enable federal savings associations to conduct their operations in accordance with best practices by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden. n15 Under OTS regulation 560.2(a), federal savings associations may extend credit as authorized under federal law without regard to state laws purporting to regulate or otherwise **[*7]** affect their credit activities. As described above, the NY law imposes a number of specific restrictions and requirements on home loans. The NY law would regulate areas covered by regulation 560.2 and therefore does not apply to federal savings associations' home lending.

n15 12 C.F.R. § 560.2(a) (2002).

OTS has described with specificity the scope of its occupation of the field of lending regulation by noting the types of state laws encompassed within the preemption. They include many of the types of provisions found in the NY law. For example, 12 C.F.R. § 560.2(b)(4) preempts state laws on terms of credit, § 560.2(b)(5) preempts state laws on loan-related fees, § 560.2(b)(9) preempts state laws on disclosure and advertising, and § 560.2(b)(10) preempts state laws on processing, origination, servicing, sale, purchase, investment, and participation in mortgages. This conclusion is further supported by numerous opinions of OTS, and its predecessor, the FHLBB. n16

n16 *See, e.g.,* OTS Op. Chief Counsel (January 21, 2003) (preemption of state predatory lending law); OTS Op. Counsels (Banking and Finance) (May 16, 2001) (preemption of state law on terms of credit); FHLBB Op. Gen. Counsel (February 1, 1982) (same); OTS Ops. Chief Counsel, (December 14, 2001, April 21, 2000, and March 10, 1999) (preemption of state law on loan-related fees); OTS Op. Chief Counsel (December 24, 1996) (preemption of state law on loan-related fees and disclosures); OTS Mem. Dep. Chief Counsel (May 10, 1995) (preemption of state law on disclosures).

**[*8]**

The NY law would thwart the more general congressional objective that OTS have exclusive responsibility for regulating the operations of federal savings associations "giving primary consideration of the best practices of thrift institutions in the United States. n17 Congress gave OTS, not the States, the task of determining the best practices for thrift institutions and creating nationally uniform rules. OTS conducts regular examinations of thrift lending operations for safety and soundness and compliance with established consumer protections. OTS also maintains a toll-free consumer hotline to respond to consumer questions and complaints. OTS seeks to assure that the thrift appropriately responds to the consumer's concern. If OTS's review indicates a violation of federal consumer laws or regulations occurred, OTS may require the institution to take appropriate corrective action.

n17 *12 U.S.C.A. § 1464*(a) (West 2001).

Federal savings associations must comply with the requirements of federal law, including restrictions on abusive practices such as those in the Home Ownership Equity Protection Act ("HOEPA"), the Re al Estate Settlement Procedures **[*9]** Act ("RESPA"), and their implementing regulations. n18 Subjecting federal savings associations to the burdens of complying with a "hodgepodge of conflicting and overlapping state lending requirements" would undermine the federal objective of permitting federal savings associations to exercise their lending powers "under a single set of uniform federal laws and regulations. This [uniformity] furthers both the 'best practices' and safety and soundness objectives of the HOLA by enabling federal thrifts to deliver low-cost credit to the public free from undue regulatory duplication and burden." n19

2003 OTS LEXIS 3, *

    n18 *See 15 U.S.C.A. § 1639* (WESTLAW 2002) (HOEPA); 12 C.F.R. pt. 226, subpart E (2002) (HOEPA regulations); *12 U.S.C.A. § 2601 et seq.* (WESTLAW 2002) (RESPA); 24 C.F.R. pt. 3500 (2002) (RESPA regulations).

    n19 *61 Fed. Reg. 50,951, 50,965* (Sept. 30, 1996) (Final Rule: Lending and Investment).

    You also ask whether the NY law's multifaceted compliance scheme, including the potential threat of litigation and application of the foreclosure provisions, is preempted for federal **[\*10]** savings associations. The NY law's compliance scheme could not be applied to federal savings associations in a manner that would compel them to comply with the preempted provisions, including intrusive lending restrictions. Such a result would have more than an incidental affect on the lending operations of federal savings associations and would run contrary to HOLA's purpose of allowing federal savings association to exercise their lending powers in accordance with a uniform federal scheme. n20

    n20 *See* 12 C.F.R. § 560.2(a) (2002). Real property laws are not preempted to the extent that they only incidentally affect the lending operations of federal savings associations or are consistent with HOLA's purposes. *See* 12 C.F.R. § 560.2(c) and (c)(2) (2002). The NY law's foreclosure provisions, however, would not appear to fit that description since they would be used to compel compliance with the lending restrictions in the NY law.

    We trust that this responsive to your inquiry. If you have further questions, please contact Richard Bennett, Counsel (Banking and Finance), at (202) 906-7409.

    Sincerely,

    (signed)

    Carolyn J. Buck

    Chief Counsel

cc: Regional Directors

    Regional Counsel

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HERMAN GRAVES, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 1:08-1140 (CKK) |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAN BROKERS CONDUIT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

UPON CONSIDERATION of Defendant Indymac Bank F.S.B.'s Motion to Dismiss the

Complaint and accompanying Memorandum in Support of the Motion to Dismiss the Complaint,

and any Opposition submitted by Plaintiffs, the Complaint, and the full record, it is hereby

ORDERED that Indymac Bank F.S.B.'s Motion is GRANTED, and

IT IS FURTHER ORDERED that all claims and allegations against Indymac Bank,

F.S.B. appearing in the Complaint are hereby DISMISSED WITH PREJUDICE.

SO ORDERED, this _____ day of _____, 2008.


_____
COLLEEN KOLLAR-KOTELLY
Judge, United States District Court
for the District of Columbia


Copies To:

Rawle Andrews, Jr., Esq.
AARP Legal Counsel for the Elderly
601 E Street NW, Suite A4-400
Washington, DC  20049
*Attorney for Plaintiffs Herman and Gracie Graves*

Andrew C. Bernasconi, Esq.
Reed Smith LLP
1301 K Street NW
Suite 1100 – East Tower
Washington, DC 20005
*Attorney for Indymac Bank, F.S.B.*

John McCauley, Esq.
Venable LLP
750 E. Pratt Street
Suite 900
Baltimore, MD 21202
*Attorney for Defendant Savings First Mortgage LLC*

Catherine A. Bledsoe, Esq.
Gordon, Feinblatt, Rothman, Hoffberger & Hollander LLC
233 East Redwood Street
Baltimore, MD 21202
*Attorney for Defendant Premier Financial Co.*

American Brokers Conduit
538 Broadhollow Road
Mellville, NY 11747

American Home Mortgage Corp.
538 Broadhollow Road
Mellville, NY 11747

- 2 -